The plaintiff, in support of his claim, first offered in evidence, an instrument duly proved and registered, which he alleged to be a deed for the land in dispute, from Andrew Bahel, to his son Jacob Bahel. The defendant contended that the instrument had never been delivered as a deed, but only as an escrow; and to prove that fact he introduced witnesses, who testified that Jacob Bahel was to give a bond to his father Andrew to maintain him during his life; and Andrew, the father, was to convey the land to Jacob : that the old man seemed uneasy before the instruments were executed, lest his son should fail to comply with the stipulations of the bond, but those present informed him that he would have a claim to the land, should Jacob fail to support him; and also, that he might sue on the bond and get his land back again: that the bond and deed both were drawn by Mr. Barnhart, and the bond was then signed and sealed by Jacob and delivered to his father, and the deed was signed and sealed by Andrew and delivered to Jacob; that the parties then respectively handed the bond and deed to the witness, to be kept until they should come together and call for them. Andrew Bahel was then about seventy years old, and was ignorant as to matters of law. The plaintiff then introduced Mr. Barnhart, who stated that, at the request of Andrew and Jacob Bahel he drew both the bond and deed, and attested *Page 531 
to the execution and delivery of them: that the bond was signed and sealed by Jacob to Andrew, and the deed was signed and sealed by Andrew, and delivered by him to Jacob; that John Gibson, the lessor of the plaintiff was present, and after the execution of the instruments, the parties wished to place them in his hands, but he declined receiving them; whereupon both parties agreed to place them in the hands of one Cowell for safe keeping, with instructions to retain them until both Andrew and Jacob should call for them, or until the death of Andrew. It was also proved, that Andrew Bahel had died, and Cowell had been compelled by legal process to produce the deed for probate and registration. The deed was executed and bore date the 5th of September, 1830.
The lessor of the plaintiff, in further support of his title, then offered in evidence the record of a judgment obtained by him against Jacob Bahel, in an action instituted by original attachment, in the County Court of Rowan. The attachment bore date 1st of January, 1834, and was issued against the estate of Jacob Bahel, for a debt of one hundred and fifty dollars, due by note, with the interest accrued thereon, returnable to February term, 1834, of Rowan County Court, and was returned levied upon the premises in dispute.
At the return term, an order of publication was made; and at the succeeding term, in May, the following entry appeared upon the trial docket: "Judgment of the Court, that publication has been made:" and also another in the words following, to wit: — "Judgment by default, final, according to specialty filed." A note was then produced from the officer of the Court, filed among the papers in that cause, purporting to be a promissory note under seal, given by Jacob Bahel to John Gibson for one hundred and fifty dollars, dated 20th of October, 1818, and payable three months after date. On the execution docket the following memorandum was entered: — "$288 with interest on $150, from May 1834, until paid, for debt, also $9 53/100 for costs." A venditioni exponas for the debt and costs, was then produced, directed to the sheriff of the county, and commanding him to sell the land levied on under the *Page 532 
attachment; and a return endorsed on the process, showing a sale, and that the lessor of the plaintiff was the purchaser. It appeared in evidence that there were no entries in relation to this suit, on the minutes of the Court. It was objected by the defendant, that there was no judgment, because the entry was for no certain sum: but the Court adjudged that there was a judgment, that id certum est, quod certum reddi potest, and the record was read in evidence. The lessor of the plaintiff then offered a deed from the sheriff, reciting the venditioni exponas, and conveying the premises described in his declaration to him.
His Honor instructed the jury in relation to the deed from Andrew Bahel to his son Jacob Bahel, that it was not sufficient for the plaintiff to show that Andrew had signed and sealed it, but he must also show that it was delivered by Andrew to Jacob as the act and deed of Andrew for the purpose of conveying to Jacob the premises therein described: that the instrument was sufficient on its face to pass title, provided they were satisfied that it was delivered to Jacob by Andrew as his act and deed, and for the purpose of transferring the title; which was a matter of fact, exclusively within their province to decide: that if they were satisfied from all the circumstances of the case, that the delivery was made to Jacob, by his father, as his act and deed, and for the purpose of transferring title, then the verbal agreement referred to by the witnesses, if subsequently made, could not divest the title of Jacob; and that on the probate and registration of said deed, the title had relation to the period of its delivery: that where an instrument was executed as a mere escrow, and not intended to operate as a deed, it should be delivered to a third person, and not to the grantee. The jury were also instructed, that if the deed was procured from Andrew by any imposition practised on him by any person, or if there was any fraud in its execution, it was null and void, and no title ever passed to Jacob: that in considering these questions, they should take into consideration the age, infirmity, and ignorance of Andrew, in connection with all the attendant circumstances: that they *Page 533 
had a right also to take into consideration the presence of Gibson, and that he was a creditor of Jacob's, and that he could not collect his debt from Jacob; and that if he used any artifices to procure the execution of the deed, which imposed on Andrew, the instrument was fraudulently obtained and was void.
The jury returned a verdict for the plaintiff; and the defendant moved for a new trial; and urged two matters which had not been introduced or adverted to on the trial, to wit, that there had been no judgment condemning the land; and that the attachment and all the proceedings thereon were in a suit wherein John Gibson was plaintiff, and Jacob Bahel defendant; and that the sheriff's deed to Gibson for the land sold, was under a venditioni exponas, against Jacob Bahel; and that no evidence has been offered to show title to the premises in Jacob Bahel, for that the deed from Andrew the father to his son Jacob, was from Andrew Pahel to Jacob Pahel. To this it was replied, that no other judgment than the one exhibited, was necessary; and that if the objection to the names had been taken on the trial, it could have been shown that Andrew the father, and Jacob the son, were known as well by the name of Bahel as Pahel. The motion for a new trial was overruled; and the defendant appealed.
— We see no ground for exception on the part of the defendant, to the charge of the judge in relation to the execution of the deed of Jacob Bahel. According to the testimony of every witness examined on the subject, it was executed as a deed, and not delivered as an escrow; and his Honor, we think, should have charged the jury, if they believed the evidence, such was the legal effect of it. If there was any fraud practised in theexecution of the deed, such fraud would in law avoid the the deed; and the instruction of the judge went at least to that extent.
Upon the other question made at the trial, whether the *Page 534 
writ of venditioni exponas was warranted by a judgment, we do not understand that objection was made to the reception of the clerk's minutes and entries as evidence; for it is impossible for us to be ignorant of theuniversal usage at the bar, to receive such memoranda instead of requiring a formal record, but that these when received in evidence did not show a judgment. So understanding the objection, we think that it was properly overruled.
The law is express in requiring of every clerk, where a cause is finally determined, to enter all the proceedings therein, in a well-bound book; and make an entire and perfect record thereof. This record is of course made out from the memoranda, or short minutes entered upon the dockets, and in the journal of the Court's daily proceedings. These are the materials by means of which the record is to be subsequently completed; but they are not the record, and of course are not admissible as such, if objection be thereunto taken. It is never taken, we believe; and the consequence of this liberal practice — a very unfortunate consequence — is, that clerks very seldom make out a a record; and that few of them can do so without professional assistance. When these minutes are received in lieu of the record required by law, they must be regarded as sufficiently certain, if from them a certain record can be made out. The rule of "id certum est,quod certum reddi potest," is properly applied in such a case; for otherwise, being but incomplete memoranda, they would always want the necessary certainty. Applying that rule to the present case, a complete record could have been made. There was a memorandum that judgment had been rendered for the plaintiff, agreeably to the specialty field; and the amount of that judgment, was a mere subject of computation.
As to the matters brought to the notice of the Court for the first time, on the motion for a new trial, we think his Honor properly refused to act upon them. The judgment is affirmed.
PER CURIAM. Judgment affirmed. *Page 535